UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRINA LANCASTER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | Case No. ED CV 14-1639-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.  INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when he found her not credible, rejected the input from lay witnesses, and determined that she would be absent or off task for only five percent of the day.  For the following reasons, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

## II.  SUMMARY OF PROCEEDINGS

In November 2011, Plaintiff applied for DIB and SSI, alleging that she had been disabled since February 2008, due to depression and

chronic bronchitis. (Administrative Record ("AR") 232-39, 251.) She later reported that she suffered from depression with psychosis, panic disorder, schizophrenia, high blood pressure, back and knee problems, and sleep problems. (AR 293, 302.) Her applications were denied initially and on reconsideration and she requested and was granted a hearing before an ALJ. (AR 80-81, 85-86, 115-16, 149-50, 178-79.) In June 2013, she appeared with counsel and testified at the hearing. (AR 35-79.) Thereafter, the ALJ issued a decision denying benefits. (AR 10-27.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-3.) She then filed the instant action.

### III.  ANALYSIS

**A.  <u>The Credibility Determination</u>**

Plaintiff testified that she suffers from back pain that prevents her from standing for a long time, walking farther than from room to room, sitting for longer than 15 or 20 minutes, carrying almost anything, and doing most chores. (AR 44-47, 53, 61-63.) She testified that she has panic attacks when she goes outside, does not like to be around groups of people, and spends most of her time sleeping, watching TV, and coloring. (AR 47, 49, 50, 58.) She also testified that she has hallucinations and hears voices. (AR 50-51.)

The ALJ found that Plaintiff's hypertension, degenerative disc disease, low back pain, gastroesophageal reflux disease, gastritis, major depressive disorder with agoraphobia, schizophrenia, mood disorder, and psychotic disorder were severe impairments that could reasonably be expected to cause her alleged symptoms but concluded that she was only partially credible. (AR 12, 16.) Plaintiff claims that the reasons the ALJ gave for questioning her credibility were

inadequate.  For the following reasons, the Court agrees and remands the credibility issue to the Agency for further consideration.

ALJs are tasked with judging a claimant's credibility.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  In doing so, they may rely on ordinary credibility techniques.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Where there is no evidence of malingering, however, they can only reject a claimant's testimony for specific, clear, and convincing reasons that are supported by substantial evidence in the record.  *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

The ALJ found that Plaintiff's allegations were inconsistent with the objective medical evidence.  (AR 16.)  It is proper for an ALJ to consider the objective medical evidence in evaluating testimony.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The problem with the ALJ's analysis here, however, is that he did not specify what objective evidence undermined what testimony.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493-95 (9th Cir. 2015) (reversing ALJ's credibility finding because she failed to explain what testimony was undermined by what evidence).  As such, this reason is rejected.

The ALJ also discounted Plaintiff's testimony because her ailments were treated conservatively with prescription medication.  (AR 16.)  This is a legitimate reason for questioning a claimant's testimony, *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), and, as it relates to Plaintiff's physical impairments, is supported by substantial evidence.  The medical record shows that Plaintiff went to the emergency room with complaints of back pain and abdominal pain on a number of occasions between 2009 and 2013, but was discharged the same day on each occasion with a prescription for medication.  (AR

482, 508, 763-65, 805, 809.)  At the June 2013 hearing, Plaintiff testified that she would be seeing a new doctor and possibly have an MRI taken "and then they'll figure surgery." (AR 53-54.)  Given that over a four-year period Plaintiff was not treated more aggressively it was reasonable for the ALJ to infer that Plaintiff's testimony that she could not walk for more than a few feet and could not sit for more than 15 or 20 minutes was exaggerated.

The Court, however, does not find that the treatment of Plaintiff's psychiatric ailments was conservative.  Though the record shows that she was treated with medication and therapy aimed at reducing the frequency of her auditory hallucinations (AR 447, 450, 570-76, 728, 730, 727, 780, 784, 793), there is no evidence that other, more aggressive modes of treatment were available or that Plaintiff was offered such treatment and refused it.

The ALJ found that Plaintiff's testimony that she could not sit for longer than 20 minutes was inconsistent with the fact that she remained seated for 45 minutes during June 2013 administrative hearing.  (AR 16.)  This "sit and squirm" jurisprudence is frowned upon in social security cases, *see Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (holding ALJ may not draw adverse conclusions based on claimant's failure to exhibit alleged symptoms at hearing), though the ALJ's reliance on it is not error per se. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).  The Court concludes that, in this case it was justified, but does not put a lot of stock in it.

The ALJ also discounted Plaintiff's testimony because she failed to follow treatment recommendations.  For example, she missed doctors' appointments and did not always take her medications, at times going for months or even years without doing so.  (AR 16.)  This, too, is a

4

legitimate basis for questioning a claimant's testimony of disabling pain. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[A]n unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding[.]"). And there is support in the record for the ALJ's finding that Plaintiff occasionally missed her doctors' appointments and frequently failed to take her medications. (AR 394, 397, 568, 750.) Though Plaintiff had an excuse for not taking her medications at times, like when she lost her medical insurance, she has not provided any explanation for failing to take her medications at other times. Further, the record shows that some of these medications worked well to resolve her symptoms. The Court recognizes that it need tread carefully here where a claimant with psychiatric impairments fails to take her medications, s*ee Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"), but on balance on this record the ALJ was not wrong for considering Plaintiff's failure to take her medications when evaluating her credibility.

The ALJ questioned Plaintiff's testimony because she made inconsistent statements to the examining psychiatrist in March 2012 about hearing voices. (AR 17.) She initially told him that she did not remember the last time she heard voices and later, in the same examination, told him that she had heard voices the night before. (AR 729.) This is a legitimate reason for questioning a claimant's testimony and is supported by the record. *Smolen*, 80 F.3d at 1284.

Finally, the ALJ found that Plaintiff's daily activities, like reading, doing puzzles, sewing, caring for her cat, managing her

personal hygiene, preparing meals, and doing some household chores, were at a "somewhat normal level of daily activity and interaction" and, in some measure, were "the same as those necessary for obtaining and maintaining employment." (AR 17.)  Here, the Court  disagrees.  First, there is nothing about these activities that suggests that Plaintiff could hold down a job five days a week, eight hours a day.  Second, Plaintiff testified that her typical day would involve going to bed at 4:00 a.m., waking up to take her medications, then sleeping until three in the afternoon.  (AR 44-49.)  Thereafter, she would watch TV, care for her cat, speak with her daughter on the telephone, color, and sleep.  Plaintiff denied being able to mop, sweep, vacuum, do laundry, shop, carry bags, read, or get together with family or friends.  (AR 44-48.)  Her ability to perform the activities she described in her testimony does not undermine her testimony that she could not work.  *See Orn*, 495 F.3d at 639 (rejecting ALJ's finding that claimant's testimony that he could not work was undermined by his ability to perform daily activities where activities were not inconsistent with testimony).  Thus, the ALJ's questioning of Plaintiff's testimony based on her daily activities is rejected.

    In the end, the Court finds that some of the reasons provided by the ALJ are supported by the evidence, some are not, and others are in between.  The ALJ's finding that Plaintiff's testimony about her daily activities evidenced an ability to work is not supported by the record.  His finding that her testimony was inconsistent with the objective medical evidence is not specific enough to sustain.  His findings that she failed to follow her treatment plan, made inconsistent statements to the examining psychiatrist, and could sit for 45 minutes without getting up though she claimed to be unable to

sit for more than 15 to 20 minutes are supported by the record (though the Court would not put a lot of weight on her ability to sit through the hearing).  Finally, the ALJ's finding that Plaintiff was treated conservatively is supported as to her physical ailments but not as to her psychiatric ailments.  Though the Court finds it a close call, it concludes that remand for further consideration of the credibility issue is warranted because it is not clear that the ALJ would have found Plaintiff unbelievable based on only the reasons that remain. *See Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding error is harmless only if substantial evidence remains to support the ALJ's credibility conclusion).

B.   <u>The Lay Witness Testimony</u>

Plaintiff contends that the ALJ erred by rejecting the written submissions of two of her daughters and a friend because: (1) they were not written by medical professionals; (2) the daughters and friend were motivated to support Plaintiff by "familial and friendship obligations"; and (3) their statements were inconsistent with the objective medical evidence.  (AR 17.)  The ALJ was entitled to reject the reports of these witnesses on the ground that they were contradicted by the medical evidence, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), and the record supports this finding. The examining psychiatrist found that Plaintiff would have no difficulty in performing simple and repetitive tasks, performing activities on a consistent basis without special supervision, completing a normal workday or workweek, accepting instructions from supervisors, and interacting with others.  (AR 730-31.)  The examining internist concluded that Plaintiff could lift and carry up to 20 pounds occasionally and ten pounds frequently; and could stand, walk,

or sit for up to six hours in an eight-hour workday. (AR 737.) These assessments undermined the reports submitted by Plaintiff's daughters and friend and were germane to these witnesses. (AR 260-67, 317-24, 344-52.) For that reason, the ALJ's findings are affirmed.

C.   <u>The Residual Functional Capacity Determination</u>

The ALJ determined that Plaintiff would need to be off task five percent of the time. (AR 15.) Plaintiff takes exception to this finding. She contends that the ALJ failed to provide a rationale for the five percent figure and that there is no evidence to support a limitation of five percent as opposed to ten percent or greater. (Joint Stip. at 4-7.) For the following reasons, Plaintiff's objections are overruled.

In formulating the residual functional capacity finding, the ALJ need not perform a function-by-function analysis; rather, he need only include those limitations that are supported by objective evidence. *Bayliss*, 427 F.3d at 1217. The question before the Court is whether the ALJ's finding that Plaintiff would be off task five percent of the time is supported by the record. It is. The examining psychiatrist concluded that Plaintiff would have no limitations in performing simple and repetitive tasks, in performing work activities on a consistent basis without special or additional supervision, or in completing a normal workday. (AR 730-31.) His opinion constitutes substantial evidence to support the ALJ's finding, even though the ALJ included additional limitations. *See*, *e.g.*, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1229 (9th Cir. 2009) (affirming ALJ's conclusion that claimant could "carry out, attend and concentrate on all but the most detailed and complex tasks" based on evaluating psychiatrist's opinion that claimant would have no limitations as a

result of her mental impairments); *see also Orn*, 495 F.3d at 632 (holding independent clinical findings of examining doctor constitute substantial evidence). For this reason, the ALJ's residual functional capacity finding is affirmed.[1]

IV.  CONCLUSION

The ALJ's decision is reversed and the case is remanded for further consideration consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATE: March 28, 2016

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\LANCASTER, C 1639\Memo Opinion and Order.wpd

---

[1] Of course, the ALJ's residual functional capacity finding was based in part on his finding that claimant was not credible. Given that he will be reconsidering the credibility issue, he may then find it necessary to revisit the residual functional capacity issue, too.